IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY MEANS, ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 11-1092 |
| vs. ) | District Judge Mark R. Hornak |
| ) | Magistrate Judge Maureen P. Kelly |
| CITY OF MCKEESPORT, VERNON ) | |
| ANDREWS, Police Officer and Individually, ) | |
| MCKEESPORT POLICE DEPARTMENT, ) | |
| ) | |
| Defendants. ) | |

# REPORT AND RECOMMENDATION

## I. RECOMMENDATION

Defendants, City of McKeesport and McKeesport Police Department ("Municipal Defendants" collectively, and "City" or "Police Department" individually), have filed a Motion to Dismiss for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P 12(b)(6). [ECF No. 12]. For the following reasons, it is respectfully recommended that Defendants' Motion to Dismiss be granted in part and denied in part.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Tammy Means ("Plaintiff") has filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging the violation of her rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. [ECF No. 11] Plaintiff also alleges a cause of action for witness intimidation pursuant to 42 U.S.C. § 1985 and state law tort claims for: (1) trespass; (2) gross negligence; (3) negligence; (4) negligent infliction of emotional distress; (5) intentional infliction of emotional distress; and (6) intrusion upon seclusion. Id.

1

Plaintiff alleges that Defendant Vernon Andrews ("Defendant Andrews"), a police officer employed by the Police Department, used his authority and position to gain access to her home without permission or a warrant. [ECF No. 11, p. 5]. Specifically, Defendant Andrews is alleged to have used his Police Department patrol vehicle to perform surveillance on Plaintiff's home and, while watching her coming and going, discovered where Plaintiff hid a spare key. Id. After locating the key, Defendant Andrews made a copy and on September 23, 2010, while in uniform, entered Plaintiff's home after she had left for work. Id. Plaintiff alleges that upon discovering that her home had been unlawfully intruded, she immediately notified the Police Department. The City solicitor and the Chief of Police responded to her complaint by conspiring to deter her, through intimidation, from pursuing charges against Defendant Andrews. Id. Defendant Andrews subsequently admitted entering Plaintiff's home without her permission and pled guilty to Defiant Trespass (18 Pa. C.S.A. § 3504), Possessing Instruments of a Crime (18 Pa. C.S.A. § 907), and Official Oppression (18 Pa. C.S.A. § 3501). Id. Plaintiff alleges that as a result of Defendants' actions, she was forced to move from her home, has lost sleep, fears rape and burglary, and generally suffers from anxiety. [ECF No. 11, p. 7].

In addition to pursuing her claims against Defendant Andrews individually, Plaintiff alleges that the Municipal Defendants are independently liable to her as a result of Police Department policies and customs, which resulted in the deprivation of her constitutional rights. [ECF No. 11, p. 8]. Central to these claims are allegations that despite a background which included a history of "violence, mischievous, illegal and/or unlawful conduct," Defendant Police Department hired Andrews and permitted him to patrol unsupervised in uniform and with a Police Department vehicle. Plaintiff asserts that the Police Department employed or failed to employ hiring, supervisory, and training policies, practices, and procedures, and that this failure

led to the violation of Plaintiff's constitutional rights.   Plaintiff also alleges state law claims against  the Municipal Defendants, contending that she has a right to recovery pursuant to the indemnity provisions of Pennsylvania's Political Subdivision Tort Claims Act (the "PSTCA"), 42 Pa. C.S.A. §§ 8541 *et seq.*  [ECF No. 17, p. 10].

At the close of pleadings, Plaintiff filed a Motion for Default Judgment as to Defendant Vernon Andrews. [ECF No. 15].  While Andrews was properly served in this action, he failed to file an Answer or otherwise respond to Plaintiff's Complaint. Plaintiff's Motion for Default Judgment was unopposed and default judgment was entered solely against Defendant Andrews. [ECF No. 18]. Upon the entry of default, and pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, this Court held a hearing. Defendant Andrews failed to appear at the hearing and, after consideration of the evidence presented, the Court entered an Order granting Default Judgment as to Defendant Andrews. The Court deferred a determination of damages for consideration at the time of trial of Plaintiff's claims against the Municipal Defendants. [ECF No. 28].

The Municipal Defendants have filed the pending Motion to Dismiss for Failure to State a Claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure [ECF No. 12]. The Municipal Defendants first argue that they cannot be held liable for the alleged Section 1983 claims because Plaintiff has failed to sufficiently allege evidence that any official policy, practice, or custom of the City or the Police Department was the cause of the civil rights violations claimed by Plaintiff. [ECF No. 13, p. 3]. Second, the Municipal Defendants argue that the Police Department is not a proper defendant in this action because the Police Department is not a distinct corporate entity separate from the City. [ECF No. 13, p. 5] Third, the Municipal Defendants argue that the punitive damages claimed by the Plaintiff are not recoverable against

3

municipalities as a matter of law. [ECF No. 13, p. 6] Fourth, the Municipal Defendants contend that Plaintiff's state law tort claims against the municipal entities are barred because of the broad immunity provided by Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. §§ 8541 *et seq.* Id. Finally, the Municipal Defendants argue that the Plaintiff has failed to state a claim under the Fifth Amendment because the Plaintiff does not assert claims based upon the conduct of federal actors. Id.

B.     STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the United States Supreme Court has held that a court must determine not whether the plaintiff will ultimately prevail, but only whether he should be entitled to offer evidence to support his claim. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); Bell Atlantic Corp v. Twombly, 550 U.S. 544, 555 (2007). The court must read the complaint in the light most favorable to the non-moving party and all well-pleaded, material allegations in the complaint must be taken as true. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). The court is bound to afford the plaintiff the benefit of every reasonable inference to be drawn from the well-pleaded allegations of the complaint. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397–98 (3d Cir. 2000). However, a court need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. Warfarin, 214 F.3d. at 397-98.

While a court will accept well-pled allegations as true for the purposes of the motion to dismiss, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or

sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. In Twombly, the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008).

### C. DISCUSSION

#### 1. Municipal Liability for Plaintiff's 42 U.S.C. § 1983 Claims

To state a valid claim under Section 1983, a plaintiff must meet two threshold requirements. First, the plaintiff must allege that the misconduct was committed by a person acting under the color of state law. Second, the plaintiff must allege that, as a result of the misconduct, she was deprived of specific rights, privileges, or immunities secured by the Constitution or laws of the United States. Collins v. City of Harker Heights, 503 U.S. 115, 120, (1992); Albright v. Oliver, 510 U.S. 266, 271 (1994).

A municipality cannot be held liable for its employees' bad acts on the basis of respondeat superior. Monell v. Dept. of Social Services, 436 U.S. 658, 694-95 (1978); Panas v. City of Philadelphia, No. 10-05248, ___ F. Supp.2d ___, 2012 WL 1671294, at *7 (E.D. Pa. May 14, 2012). Rather, the "government itself, through its policies or practices, must be sufficiently culpable before" a court imposes Section 1983 liability. Panas, 2012 WL 1671294, at *7.

5

However, merely alleging the existence of a policy, practice, or custom is not enough. The plaintiff in a Section 1983 action must show an "affirmative link" between the occurrence of police misconduct and the municipality's policy, custom, or practice. Rizzo v. Goode, 423 U.S. 362, 371 (1976).

Courts have held municipalities liable for their policies, practices, or customs in each of four scenarios that appear relevant to the instant case.

First, a municipality can be held liable for constitutional violations resulting from policies implemented through "official proclamation, policy, or edict." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)).

Second, municipal liability may also attach where a municipality's course of conduct is considered to be a "custom" when, though not authorized by law, "practices of state officials [are] so permanent and well-settled as to virtually constitute law." Id. This may occur when a municipality is aware of prior complaints regarding a particular police officer's unlawful conduct but the municipality fails to take affirmative steps to prevent future misconduct. Beck, 89 F.3d at 971 (citing Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990)).

Third, a municipality may be held liable for the constitutional violations of an employee police officer when the municipality fails to adequately train the officer. City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989). In this case, where the basis for Section 1983 liability rests upon a municipality's failure to adequately train or supervise a police officer, the claim will only succeed where the failure to train or supervise amounts to "deliberate indifference" to the rights of persons with whom the police come into contact. Id. at 388. "Deliberate indifference" exists where "the need for more or different training is so obvious, and the inadequacy so likely to

result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390. Only then can "such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under Section 1983." Id. at 389.

Finally, municipal liability can also be found where the municipality fails to adequately screen employees before hiring. Bd. of County Com'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 411 (1997). In Brown, the United States Supreme Court held that the deliberate indifference standard also applies to allegations of inadequate screening of potential employees:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

Id. Thus, in the case at issue, liability may exist if adequate screening of Defendant Andrews' background would have led a reasonable policymaker to conclude that his hiring foreseeably would have resulted in constitutional violations to third parties.

At this initial stage of the proceeding, given that causation is often for the jury, Bielevicz, 219 F.3d at 276, Plaintiff's allegations of official policy or custom, failure to train or supervise, and failure to adequately screen applicants have been pled with the requisite specificity to withstand the Municipal Defendants' Rule 12(b)(6) challenge.

### a. Official Policy

With regard to Plaintiff's official policy claim, she alleges that the Police Department standard operating procedures are "improperly written, taught, and/or enforced" because they fail "to account for police officers at any given point in their shift." [ECF No. 11, pp. 7-8]. This

7

allegation, if taken as true, coupled with Plaintiff's allegations regarding failure to screen potential police officers and supervise those with questionable backgrounds, may be sufficient to give rise to a "direct causal link" between the Police Department's policy or custom and Plaintiff's Fourth Amendment violation. Rizzo, 423 U.S. at 471; Beck, 89 F.3d 966, 971 (3d Cir. 1996). The Amended Complaint therefore states a plausible claim that the warrantless entry into Plaintiff's home by Defendant Andrews was a direct result of the Police Department's official policy or custom, in failing to adequately account for on-duty police officers, especially those who have been hired regardless of flawed backgrounds. At this preliminary stage of her action, Plaintiff has sufficiently alleged a cause of action for municipal liability under a theory of a deficient official municipal policy or custom.

        **b.     Failure to Adequately Train and Supervise**

Plaintiff's allegations of inadequate supervision and training of Defendant Andrews also are sufficient to survive the Municipal Defendants' Motion to Dismiss and satisfy the "deliberate indifference" standard set forth in Harris. 489 U.S. at 388. Specifically, Plaintiff alleges that the Police Department knew that Defendant Andrews "had a prior history of violence; mischievous; illegal and/or unlawful conduct, which put Defendants … on notice of his propensity for illegal and/or unlawful conduct," and yet failed to supervise or properly train him. [ECF No. 11, p. 4]. Plaintiff's Amended Complaint includes allegations that as a result of a failure of the Police Department to account for police officers during their shifts and to train potentially unqualified police officers like Defendant Andrews to adhere to proper search criteria, Defendant Andrews gained illegal entry to Plaintiff's home under color of a Police Department uniform and patrol car. [ECF No. 11, pp. 3, 5, 8]. These allegations, if taken as true, indicate that officials at the Police Department may have manifested "deliberate indifference" to Plaintiff's constitutional

rights by failing to adequately train and supervise Defendant Andrews, after having reason to know he needed specific training as to appropriate and lawful police conduct. It is uncertain what discovery may reveal about training and supervision policies and whether these policies would be "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent...." Id. at 390. At this early stage of the litigation, however, Plaintiff has sufficiently stated a Section 1983 claim for inadequate supervision and training.

      c.      **Failure to Adequately Screen New Hires.**

Plaintiff avers that the Municipal Defendants failed to utilize due care in hiring officers because Defendant Andrews had "a prior history of violence, mischievous, illegal, and/or unlawful conduct; which put Defendants…on notice of his propensity for illegal and/or unlawful conduct because they knew or should have known of such a history." [ECF No. 11, p. 4]. If taken as true, these allegations could satisfy the "deliberate indifference" standard, that the "obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." Brown, 520 U.S. at 411. If, as alleged, the Police Department knew that Defendant Andrews had a prior history of violence and illegal conduct, a likely consequence of hiring him could be the deprivation of the constitutional rights of third parties with whom he might interact while on duty. Discovery may reveal whether or not such "prior history of violence, illegal, and/or unlawful conduct" is sufficient to have put Municipal Defendants on notice of Defendant Andrews' alleged propensity for violence and unlawful acts. Again, at this stage of the litigation, Plaintiff's allegations under a theory of inadequate screening are sufficient to withstand a Rule 12(b)(6) Motion to Dismiss at this time.

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss be denied with respect Plaintiff's Section 1983 claims alleging municipal liability for violations of the Fourth and Fourteenth Amendments.

**2.    Fifth Amendment Claims**

Plaintiff's Fifth Amendment claims against Municipal Defendants fail as a matter of law. The Fifth Amendment prohibits, in part, deprivations of property accomplished "without due process of law." U.S. Const., amend. V. Because Plaintiff does not identify a specific clause of the Fifth Amendment under which she is alleging a cause of action, this Court assumes that she is alleging a due process violation.[1] However, "the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." Caldwell v. Beard, 324 F. App'x 186, 189 (3d Cir. 2009); See also Falbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 158 (1896) ("The Fifth Amendment…applies only to the federal government, as has many times been decided."). Plaintiff alleges causes of action solely against municipal actors. There are no involved or named federal actors. Because the Fifth Amendment is inapplicable to the Municipal Defendants, it is respectfully recommended that Count IV of Plaintiff's Amended Complaint be dismissed.

**3.    42 U.S.C. § 1985**

Although neither party specifically addresses Plaintiff's 42 U.S.C. § 1985(2) witness intimidation claim in their respective briefs, this Court will address the sufficiency of the claim for the purposes the instant Motion to Dismiss. Section 1985(2) provides, in relevant part:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely,

---

[1] Count IV of the Amended Complaint alleges a violation of the Fifth Amendment under the title, "Unauthorized Investigation."

> fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified…the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators…

42 U.S.C § 1985.[2] A Section 1985(2) witness intimidation claim requires "(1) a conspiracy between two or more persons (2) to deter a witness by force, intimidation or threat from attending court or testifying freely in any pending matter, which (3) results in injury to the plaintiffs." Malley-Duff & Associates, Inc. v. Crown Life Ins. Co., 792 F.2d 341, 356 (3d Cir. 1986). Unlike other Section 1985 claims, the United States Supreme Court has held that a claim for witness intimidation does not require allegations of racial or class-based invidiously discriminatory animus. Kush v. Rutledge, 460 U.S. 719 (1983). However, a plaintiff seeking to recover for witness intimidation under Section 1985(2) must allege "a nexus between the alleged conspiracy and a proceeding in federal court." Deubert v. Gulf Fed. Sav. Bank, 820 F.2d 754, 758 (5th Cir. 1987); Brawer v. Horowitz, 535 F.2d 830, 839 (3d Cir. 1976). In the instant case, Plaintiff has alleged that "the solicitor and Chief conspired and attempted to deter, through intimidation, Tammy Means from pursuing her charges against Vernon Andrews." [ECF No. 11, p. 6]. The pleadings make it apparent that at the time she was interviewed by the City solicitor and Police Department chief, no federal charges or actions were pending against Defendant Andrews. As such, it is not possible that she was "injured on account of having attended or testified in federal court." Deubert, 820 F.2d. at 758. Because Plaintiff fails to allege any cognizable injury under Section 1985(2), it is respectfully recommended that Plaintiff's claims for witness intimidation (Count V) pursuant to 42 U.S.C. § 1985(2) be dismissed.

---

[2] Section 1985(2) has been held to provide a remedy for two specific types of claims; first, a conspiracy to deny equal protection of the laws, requiring allegations of "a class-based, invidiously discriminatory animus," Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976); and, second, a claim for intimidation or retaliation against parties or witnesses, in any court of the United States. Id. Plaintiff does not allege a Section 1985(2) conspiracy to deny equal protection of the law and this Court's analysis therefore is limited to the first half of Section 1985(2), regarding a conspiracy to intimidate a witness in any court of the United States.

### 4. State Law Claims

In addition to Plaintiff's Section 1983 and Section 1985 claims, Plaintiff also asserts various state tort claims, including causes of action for trespass (Count VII), gross negligence (Count VIII), negligence (Count IX), negligent infliction of emotional distress (Count X), intentional infliction of emotional distress (Count XI), and intrusion upon seclusion (Count XII). [ECF No. 11]. In their Motion to Dismiss, the Municipal Defendants contend that Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA") immunizes the municipality from such claims.

The PSTCA provides broad immunity to municipalities against state tort claims. It provides, in relevant part:

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

42 Pa. C.S.A. § 8541.

In order to maintain a state law tort action against a municipality within one of the PSTCA exceptions to immunity, a plaintiff must satisfy three conditions. Talley v. Trautman, No. 96-5190, 1997 WL 135705, at *5 (E.D. Pa. Mar. 13, 1997). First, the plaintiff must allege a tort for which relief could be granted at common law or by statute if no governmental immunity applied. Id.; 42 Pa. C.S.A. § 8542(a)(1). Second, the injury must have resulted from the negligent conduct of the municipality or its employee acting within the scope of his employment. 42 Pa. C.S.A. § 8542(a)(2). Third, the alleged tort must fall within one of eight specific categories of governmental activity: (1) vehicle liability; (2) the care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) the care, custody or control of animals. 42 Pa. C.S.A. § 8542(b)(1)-(8). "Because of the clear intent to insulate government from exposure to tort

liability for any of its acts, exceptions carved out by the Legislature from this general rule are strictly construed" Kiley by Kiley v. City of Philadelphia, 645 A.2d 184, 185-86 (Pa. 1994).

In addition, "local agencies are not liable for injuries caused by their own acts or the acts of their employees that constitute 'a crime, actual fraud, malice or willful misconduct." DeBellis v. Kulp, 166 F. Supp.2d 255, 278 (E.D. Pa. 2001); 42 Pa. C.S.A. § 8542(a). See also Heckensweiler v. McLaughlin, 517 F. Supp. 2d 707, 719 (E.D. Pa. 2007) (holding that "because the exceptions to immunity cover only 'negligent acts,' [the township] is categorically immune from any intentional acts (e.g. intentional infliction of emotional distress."); Kessler v. Monsour, 865 F. Supp. 234, 241 (M.D. Pa. 1994) ("A local agency is immune from liability for state-law intentional torts."). Because Plaintiff does not allege the Municipal Defendants' negligence within any of the categories enumerated in Section 8542 and, further, alleges claims predicated upon Defendant Andrews' intentional acts, the Municipal Defendants' Motion to Dismiss should be granted with respect to Counts VII, VIII, X, IX, XI, and XII.

Plaintiff contends that her state tort claims nevertheless should survive Defendants' Motion to Dismiss because even if the Municipal Defendants are granted immunity, under the PSTCA, they are liable to indemnify Defendant Andrews for any conduct within the scope of his duties as a police officer. Plaintiff asserts that this indemnity obligation renders the Municipal Defendants jointly and severally liable *to Plaintiff* for the state law claims asserted against Defendant Andrews. Plaintiff fails to grasp the limitations of indemnity in this context. It is true that municipalities are responsible for indemnifying *employees* if the alleged tortious act is within the scope of employment, regardless of whether the municipalities are otherwise immune. 42 Pa. C.S.A. § 8548; Wiehagen v. Borough of N. Braddock, 594 A.2d 303, 305 (Pa. 1991). The purpose of the indemnity provision "is to permit local agency employees to perform their

13

'official duties' without fear of personal liability, whether pursuant to state or federal law, so long as the conduct is performed during the course of their employment." Id. at 306.

However, the indemnity provision is meant to protect municipal employees, not plaintiffs, and does "not provide a cause of action for a plaintiff in an underlying action." Best v. Keenan, No. 03-5651, 2004 WL 3186305, at *2 (E.D. Pa. Oct. 14, 2004)(citing Johnson v. City of Erie, 834 F. Supp. 873, 877 (W.D. Pa. 1993)); Schutz v. Honick, No. 10-832, 2012 WL 393501 *2 (W.D. Pa. 2012). Thus, even if Defendant Andrews may eventually seek indemnification from the Municipal Defendants should damages be awarded against him, Plaintiff may not maintain state tort claims against the Municipal Defendants based solely upon the PSTCA indemnity provision.

Because the Municipal Defendants are statutorily immune to Plaintiff's state law tort claims, it is respectfully recommended that Count VII (trespass), Count VIII (gross negligence), Count IX (negligence), Count X (negligent infliction of emotional distress), Count XI (intentional infliction of emotional distress), and Count XII (intrusion upon seclusion) of Plaintiff's Amended Complaint be dismissed for failure to state a claim upon which relief may be granted.

### 5. Proper Defendants

The Municipal Defendants next contend that the claims brought against the Police Department should be dismissed as redundant because it maintains no corporate existence separate from the City of McKeesport. [ECF No. 13, p. 5]. In response, Plaintiff maintains that, "[w]hile it may be the case that McKeesport and the McKeesport Police Department are the same entity, without discovery the same cannot be said at this time." [ECF No. 17, p. 8]. However, a municipal police department is not a proper defendant in a Section 1983 action. Pino

v. Baumeister, No. 96-5233, 1997 WL 811011, at *1 (E.D. Pa. Dec. 23, 1997). "While a municipality may be sued under § 1983, a municipal police department is not a party subject to suit under § 1983." Id.; see also Irvin v. Borough of Darby, 937 F. Supp. 446, 450 (E.D. Pa.1996); Johnson v. City of Erie, 834 F. Supp. 873, 878–79 (W.D. Pa. 1993); PBA Local No. 38 v. Woodbridge Police Dept., 832 F. Supp. 808, 825–26 (D.N.J. 1993). In Pennsylvania, "all suits against any department of the city must be brought in the name of the city itself because the departments of the city do not have an independent corporate existence." City of Philadelphia v. Glim, 613 A.2d 613, 616 (Pa. Commw. Ct. 1992) Therefore, City of McKeesport, a municipal corporation, stands as the proper defendant in this case and it is respectfully recommended that the McKeesport Police Department be dismissed.

### 6. Punitive Damages

The Municipal Defendants also seek dismissal of Plaintiff's claim for punitive damages. "Punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67 (1981). Because a municipality can have no malice independent of its officials, punitive damages are not sensibly assessed against the government entity itself. Id. Thus, the United States Supreme Court has specifically held that punitive damages are not recoverable against municipalities in Section 1983 actions. Id. Punitive damages are also barred against municipalities under 42 U.S.C. § 1985. Mitros v. Cooke, 170 F. Supp. 2d 504, 507 (E.D. Pa. 2001). It is respectfully recommended that Plaintiff's punitive damage claims be dismissed against the Municipal Defendants.

15

D.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss be granted as to Plaintiff's Fifth Amendment claims (Count IV), granted as to Plaintiff's state tort claims (Counts VII, VIII, IX, X, XI, and XII), granted as to Plaintiff's 42 U.S.C. §1985 claim for witness intimidation (Count V), and granted as to punitive damages against the City of McKeesport. It is further recommended that the claims against Defendant City of McKeesport Police Department be dismissed in their entirety and that the City of McKeesport remain as the sole municipal defendant. Finally, it is recommended that the Motion to Dismiss be denied as to Plaintiff's 42 U.S.C. § 1983 claims alleging municipal liability for violations of the Fourth and Fourteenth Amendments (Counts I, II, III and VI).

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2., the parties are permitted to file written objections in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193

n.7 (3d Cir. 2011). Any party opposing objections may file their responses to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

                                                Respectfully Submitted,

                                                /s/ Maureen P. Kelly  
                                                MAUREEN P. KELLY  
                                                UNITED STATES MAGISTRATE JUDGE

Dated: November 19, 2012

Cc:    The Honorable Mark R. Hornak  
       United States District Judge

       All counsel of record by Notice of Electronic Filing