IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY MEANS, | ) |
|     Plaintiff, | ) |
| | ) Civil Action No. 11-1092 |
| | ) |
|     vs. | ) District Judge Mark R. Hornak/ |
| | ) Magistrate Judge Maureen P. Kelly |
| CITY OF MCKEESPORT, VERNON | ) |
| ANDREWS, Police Officer and Individually, | ) |
| MCKEESPORT POLICE DEPARTMENT, | ) |
| | ) |
|     Defendants. | ) |

## REPORT AND RECOMMENDATION

**I.  RECOMMENDATION**

Pending before the Court is a Motion for Summary Judgment (the "Motion") (ECF No. 50) filed by Defendant, the City of McKeesport ("City of McKeesport") seeking the entry of judgment in its favor as to all claims asserted against it by the plaintiff, Tammy Means ("Means" or "Plaintiff"). The parties have filed briefs in support and in opposition to the Motion (ECF Nos. 51, 55), and the City of McKeesport has filed its reply to Plaintiff's response (ECF No. 56).  In addition, the parties have separately filed concise statements of material facts, as well as exhibits which have been reviewed in detail by the Court.  (ECF Nos. 52, 53, 54 and 55-1 – 55-5).

After consideration of the parties' submissions and the applicable legal principles, the Court concludes that in light of the summary judgment standard of review and based upon the evidence of record, Plaintiff has failed to present sufficient facts and evidence to establish that the City of McKeesport has violated her constitutional rights or has any liability for the

1

unauthorized illegal conduct of one of its former police officers, Defendant Vernon Andrews ("Andrews"). Accordingly, for the following reasons, it is recommended that the Motion for Summary Judgment filed by the City of McKeesport be GRANTED.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging, *inter alia*, the violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution. (ECF No. 11).[1]

Plaintiff alleges that Defendant Andrews, a police officer employed by the City of McKeesport Police Department (the "Police Department"), used his authority and position to gain access to her home without permission or a warrant. (ECF No. 11, p. 5). Specifically, Defendant Andrews is alleged to have used his Police Department patrol vehicle to perform surveillance on Plaintiff's home and, while watching her coming and going, discovered where Plaintiff hid a spare key. Id. After locating the key, Defendant Andrews made a copy and on September 23, 2010, while in uniform, entered Plaintiff's home after she had left for work. Id. Plaintiff alleges that upon discovering that her home had been unlawfully entered, she immediately notified the Police Department. Plaintiff further alleges that the City of McKeesport solicitor and the Chief of Police responded to her complaint by conspiring to deter her, through intimidation, from pursuing charges against Defendant Andrews. Id. Defendant Andrews subsequently admitted entering Plaintiff's home without her permission and pled guilty to Defiant Trespass (18 Pa. C.S.A. § 3504), Possessing Instruments of a Crime (18 Pa. C.S.A. §

---

[1] As a result of this Court's ruling on Defendants' Motion to Dismiss (ECF No. 12), Plaintiff's Fifth Amendment claim (Count IV), state tort claims (Counts VII, VIII, IX, X, XI, and XII), claim for witness intimidation (Count V), and punitive damage claim were dismissed. (ECF No. 29 and 30).

907), and Official Oppression (18 Pa. C.S.A. § 3501). Id. Plaintiff alleges that as a result of Defendants' actions, she was forced to move from her home, has lost sleep, fears rape and burglary, and generally suffers from anxiety. (ECF No. 11, p. 7).

In addition to pursuing her claims against Defendant Andrews individually, Plaintiff alleges that the City of McKeesport is independently liable to her as a result of Police Department policies and customs, which resulted in the deprivation of her constitutional rights. (ECF No. 11, p. 8). Central to these claims are allegations that despite a background which included a history of "violence, mischievous, illegal and/or unlawful conduct," the Police Department hired Defendant Andrews and permitted him to patrol unsupervised in uniform and with a Police Department vehicle. Plaintiff asserts that the Police Department failed to employ adequate policies, practices, and procedures with regard to hiring, supervision and training, and that this failure led to the violation of Plaintiff's constitutional rights.

At the close of pleadings, Plaintiff filed a Motion for Default Judgment as to Defendant Andrews. (ECF No. 15). While Andrews was properly served in this action, he failed to file an Answer or otherwise respond to Plaintiff's Complaint. Plaintiff's Motion for Default Judgment was unopposed and default judgment was entered solely against Defendant Andrews. (ECF No. 18). Upon the entry of default, and pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, this Court held a hearing. Defendant Andrews failed to appear at the hearing as scheduled and, after consideration of the evidence presented, the Court entered an Order granting default judgment as to Defendant Andrews. The Court deferred a determination of damages until the time of trial. (ECF No. 28).

Defendants City of McKeesport and the Police Department filed a Motion to Dismiss for Failure to State a Claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF

No. 12). Following this Court's partial grant of the Motion to Dismiss (ECF No. 30), Plaintiff's remaining claims consist of her causes of action against the City of McKeesport arising under the Fourth Amendment (Count II) and the Fourteenth Amendment (Count III), as derivatively pursued through Count I, (asserting a claim pursuant to 42 U.S.C. § 1983)[2] and Count VI (asserting liability on the part of the City of McKeesport arising from its failure to train, discipline and supervise Defendant Andrews).

The parties engaged in extensive discovery. This Court granted Plaintiff's request for additional time to complete discovery. Discovery in this action has concluded.

At this point, it must be noted that substantial evidence identified by the City of McKeesport in support of the instant Motion has not been specifically refuted by Plaintiff. Plaintiff has failed to respond to Defendant's Concise Statement of Facts (ECF No. 53), or, alternatively, provide citations to the record in support of any of her allegations. (ECF No. 55). Plaintiff has attached well over 450 pages of exhibits to her brief in opposition to Defendant's Motion for Summary Judgment, comprising in their entirety, the Police Department's Manual of Policies and Procedures (ECF No. 55-1, pp. 1-104; 55-2 pp. 1-106; 55-3 pp. 1-99; ECF No. 55-4, pp. 1-86; 55-5, pp. 1-70). However, Plaintiff fails to cite to any particular policy or provision that she may assert as relevant to opposing Defendant's Motion for Summary Judgment. In addition,

---

[2] Section 1983 imposes civil liability for misconduct committed by a person acting under the color of state law, resulting in the deprivation she of specific rights, privileges, or immunities secured by the Constitution or laws of the United States. *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992); *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Shuman v. Penn Manor School Dist.*, 422 F.3d 141, 146 (3d Cir. 2005). Accordingly, the Court understands Plaintiff's first cause of action to set forth her statutory right to recovery in the event a violation of her constitutional rights is established.

while Plaintiff has filed a "Joint Stipulation of Facts" (ECF No. 54), it is limited to four items, each item setting forth the home or business address of a party to this litigation.

Given the state of the record, the uncontroverted evidence cited by Defendant City of McKeesport, including the Plaintiff's deposition and the deposition of the Chief of Police, indicates that upon receiving Plaintiff's report of the break-in and Defendant Andrews' involvement, he was placed on administrative leave. The Allegheny County District Attorney was notified of the incident for purposes of assigning the investigation to an outside law enforcement agency. In addition, Plaintiff's home was assigned a protective security detail for several days. (ECF No. 52-2, pp. 9-10; ECF No. 52-3, p. 43). Within days of the incident, Defendant Andrews resigned from the Police Department, and was charged with crimes related to the break-in of Plaintiff's home.[3] (ECF No. 52-3, pp. 44-46).

The evidence also establishes that Defendant Andrews attended and graduated from the Allegheny County Police Training Academy (ECF No. 52-3, p. 9), and received training regarding Police Department policies and procedures. In 2007, three years before the incident in question, Andrews received a summons to appear before a federal grand jury for the purpose of investigating his alleged participation in drug related activity. (ECF No. 52-3, pp. 94-95). During the course of the investigation, Andrews was placed on desk duties. At the conclusion of the investigation, Andrews was not charged with any criminal wrongdoing, and was returned to active duty. (ECF No. 52-3, pp. 96-96).

Plaintiff alleges that a Protection of Abuse ("PFA") Order was issued against Defendant Andrews in 1999. However, Plaintiff fails to present any evidence regarding the circumstances

---

[3] The docket entries in the proceedings before the Allegheny County Court of Common Pleas reflect that Defendant Andrews pled guilty to three misdemeanor charges and was sentenced to two years' probation.
https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-02-CR-0016704-2010.

of the Order, such as whether it was issued to a family member, the behavior giving rise to the Order, and/or whether Defendant Andrews was arrested or charged with any crime related to the PFA.

The McKeesport Chief of Police testified that he was unaware of the 1999 PFA Order, but that an active PFA order filed against an officer mandates the confiscation of the officer's weapon. (ECF No. 52-2, p. 10). Depending on the circumstances surrounding the PFA order, however, duty restrictions can vary based upon a determination of the issuing court. He is aware of one situation where a court permitted one of his officers to carry a weapon on duty while a PFA order was pending.

### B.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), "(t)he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "(T)his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consolidated Rail Corporation*, 963 F.2d 599, 600 (3d Cir. 1992).

With particular relevance to this action, in order to avoid summary judgment, however, parties may not rely on unsubstantiated allegations. Parties seeking to establish that a fact is or is not genuinely disputed must support such an assertion by "citing to particular parts of materials in the record," by showing that an adverse party's factual assertion lacks support from cited materials, or demonstrating that a factual assertion is unsupportable by admissible evidence. Fed. R. Civ. P. 56(c)(1); *see Celotex*, 477 U.S. at 324 (requiring evidentiary support for factual assertions made in response to summary judgment). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). Parties must produce evidence to show the existence of every element essential to its case that they bear the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323; *see Harter v. G .A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). Such evidence may include "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P 56(c)(1)(A). Failure to properly support or contest an assertion of fact may result in the fact being considered undisputed for the purpose of the motion, and entitle the court "to grant

summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## C. DISCUSSION

To establish a valid claim under Section 1983, a plaintiff must meet two threshold requirements. First, the plaintiff must show that the alleged misconduct was committed by a person acting under the color of state law. Second, the plaintiff must prove that, as a result of the misconduct, she was deprived of specific rights, privileges, or immunities secured by the Constitution or laws of the United States. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir. 1997); *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived him of a federal right.").

With regard to the City of McKeesport, "(a) municipality or other local government may be liable under § 1983 if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, ___U.S. ___, 131 S. Ct. 1350, 1359 (2011) (quoting *Monell v. Dept. of Social Services*, 436 U.S. 658, 694-95 (1978)). However, such entities "are responsible only for 'their own illegal acts' (and) are not vicariously liable for the acts of their employees." *Id*. (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)). In other words, liability against the City of McKeesport may not be established by the respondeat superior doctrine, but instead must be founded upon evidence indicating the City of McKeesport itself supported a violation of the Plaintiff's constitutional rights. *Monell*, 436 U.S. at 694; see also *Bielevicz v. Dubinon*, 915 F.3d 845, 849–50 (3d Cir.1990) ("municipal liability attaches only when 'execution of a government's policy or

8

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'") (quoting *Monell*, 436 U.S. at 694).

### 1. Policy or Custom

To prevail on her claims against the City of McKeesport, Plaintiff must demonstrate that the City of McKeesport adopted a policy, practice or custom resulting in her constitutional injury. Merely alleging the existence of a policy, practice, or custom is not enough. The plaintiff in a Section 1983 action must show an "affirmative link" between the occurrence of police misconduct and the municipality's policy, custom, or practice. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976). In addition, the plaintiff must show that the municipality acted deliberately and was the "moving force" behind the claimed constitutional deprivation she suffered. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 – 05 (1997).

The City of McKeesport asserts that it is entitled to summary judgment as to each of Plaintiff's remaining claims because there are no facts in the record establishing that it adopted any particular policy or custom which caused Plaintiff's alleged injuries. Plaintiff relies solely upon the allegations of her Complaint, contending that "the Standard Operating Procedures of the department significantly aided and encouraged Vernon Andrews to violate her rights, and played a part in her continued intimidation and mistreatment by the Solicitor and Chief of Police during the investigation." (ECF No. 55, p. 9). She asserts "it is apparent that the regulations are in place that made Vernon Andrews feel it was appropriate to make an extra spare key and reenter the home of a citizen when she was not home." (ECF No. 55, p. 10). Plaintiff goes on to state, without any specific citation to the record, that she "is confident that these allegations, supported by her experiences with the law enforcement officers, will be supported by police

9

records found in discovery." *Id.* This mere statement of confidence, absent the substantive support of citations to record evidence, does not defeat summary judgment.

As indicated by Defendant, after a more than adequate period for discovery, Plaintiff proffers no evidence in support of her claims. While she has attached nearly 480 pages of policies and procedures of the Police Department, Plaintiff fails to indicate which policy or procedure caused her injury. Furthermore, Plaintiff failed to proffer any evidence of record whatsoever, such as deposition testimony, affidavits, answers to interrogatories or requests for admission, to establish that a City of McKeesport policy or custom was the moving force behind her alleged injury.

### 2. Inadequate Training or Supervision

Similarly, Plaintiff fails to support her claims arising out of alleged inadequate training and supervision of Defendant's police officers. A municipality may be held liable for the constitutional violations of an employee police officer when the municipality fails to adequately train or supervise the officer, *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989); however, such a claim will succeed only where the failure to train or supervise amounts to "deliberate indifference" to the rights of persons with whom the police come into contact. *Id.* at 388. "Deliberate indifference" exists where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. Only then can "such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under Section 1983." *Id.* at 389. The United States Court of Appeals for the Third Circuit has held that meeting the burden of proving deliberate indifference "typically requires

10

proof of a pattern of underlying constitutional violations." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004).

Plaintiff, again, relies solely upon the allegations of her Complaint, and fails to point to any evidence of record indicating a pattern of unauthorized residential entry by police officers generally, or by Defendant Andrews specifically, such that the City of McKeesport would have been on notice of its need to provide additional supervision or training. (ECF No. 55, p. 10). The one-time incident involving a lone police officer at issue here does not show that the supervision or training of Defendant Andrews was inadequate, or that Plaintiff's injuries resulted from the alleged lack thereof. In the absence of evidence that the City of McKeesport in fact failed to train its employees, or had notice of and disregarded a pattern of similar constitutional violations by its employees, no reasonable juror could conclude that the Defendant's training or supervision resulted in Plaintiff's injuries.

As indicated by Plaintiff, municipal liability also may be found where the municipality fails to adequately screen employees before or after hiring. *Bryan Cnty*, 520 U.S. at 411. In *Bryant Cnty*, the United States Supreme Court held that the deliberate indifference standard also applies to allegations of inadequate screening of potential employees:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

*Id.* In the case at issue, liability may exist if the evidence indicates that adequate screening of Defendant Andrews' background would have led a reasonable policymaker to conclude that his hiring or retention foreseeably would result in constitutional violations to third parties.

### a. 2007 grand jury investigation.

In support of her claim, Plaintiff points to evidence that Defendant Andrews appeared before a grand jury in 2007, related to an investigation into drug activity. Plaintiff argues this evidence is sufficient to create a jury question regarding the propriety of hiring and/or retaining him as a City of McKeesport police officer. (ECF No. 55, p. 11). Defendant responds, citing the testimony of its Chief of Police, who admits to knowledge of the grand jury investigation. However, the uncontroverted testimony establishes that at the conclusion of the investigation, no charges were filed against Andrews.[4] (ECF No. 52-2, p. 12).

### b. 1999 PFA Order

Plaintiff next points to a "final" PFA Order issued in May 1999 against Defendant Andrews. Plaintiff contends that the issuance of the PFA Order in 1999, a decade before her injury in 2010, would have led a "reasonable policymaker (to) conclude that the hiring of a criminally dangerous police officer would result in the deprivation of many third parties' rights." (ECF No. 55, p. 1). However, Plaintiff offers no evidence regarding the circumstances of the PFA Order, whether the individual seeking protection was a family member or a member of the general public, the nature of the request for protection, and/or whether Andrews was arrested or charged with any crime related to the PFA Order.

---

[4] The Court notes that there is no allegation in the Complaint that the conduct of Defendant Andrews towards Plaintiff was related to drugs or drug activity.

The McKeesport Chief of Police testified that he was unaware of the 1999 PFA Order, and that a current PFA order filed against an officer requires that his or her weapon be confiscated. (ECF No. 52-2, p. 10). He further testified that, depending on the circumstances surrounding a PFA order, restrictions can vary based upon a determination of the court issuing the order. He is aware of one situation where a court permitted one of his officers to carry a weapon on duty while a PFA order was pending. *Id.* This evidence indicates that a PFA order may be issued in a variety of circumstances that do not necessarily render a police officer unqualified for employment in the City of McKeesport. Plaintiff does not attempt to draw a connection between the 1999 PFA Order and her injury by providing evidence of the circumstances of its issuance so as to establish Defendant Andrews' unfitness to serve. Simply, Plaintiff has proffered no evidence showing that as a result of the issuance of a PFA Order in 1999, the City of McKeesport had actual or constructive notice that hiring or retaining Defendant Andrews was substantially likely to result in a constitutional violation and that it consciously disregarded this risk of harm. In the absence of this evidence, a reasonable juror could not find the requisite nexus between the 1999 PFA Order and Plaintiff's alleged constitutional injury sufficient to impose liability under *Monell*.

### 3. Illegal search and seizure

Finally, Plaintiff argues the City of McKeesport has failed to sufficiently address her Fourth Amendment claim of an illegal search and seizure and as a result, summary judgment is not appropriate as to this particular claim. Plaintiff again misapprehends Defendants' arguments as well as the nature of a Section 1983 claim. Simply, a municipality's liability cannot rest upon *respondeat superior.* Instead, liability must be predicated upon proof that Plaintiff's alleged Fourth Amendment injury is attributable to a City of McKeesport custom or policy. The custom

or policy at issue must also result in a conscious deliberate indifference to the rights of third parties, such as the Plaintiff. This requires evidence of indifference on the part of municipal officials, and proof that the conduct of the municipality was the "moving force" behind the violation of her Fourth Amendment rights. *Carswell v. Borough of Homestead*, 381 F.3d at 244. Because Plaintiff has failed to produce any probative evidence that the Defendant municipality adopted a policy, practice or custom resulting in Plaintiff's Fourth Amendment injury at the hands of Defendant Andrews, it cannot be found liable for the violation of Plaintiff's Fourth Amendment rights.

In sum, Plaintiff relies solely upon bare assertions of municipal liability and conclusory allegations of misconduct by the City of McKeesport in its adoption of policies, customs, training, supervision and hiring of Defendant Andrews. She has failed to point to any substantiating evidence of record in support of her claims asserted against the City of McKeesport. Under these circumstances, given the state of the record in this action, no reasonable jury could conclude that the City of McKeesport, through its own conduct, caused Plaintiff's alleged constitutional injuries. Accordingly, summary judgment is appropriately entered in favor of the City of McKeesport as to all remaining claims asserted against it.

### D. CONCLUSION

In opposition to Defendant's Motion for Summary Judgment, Plaintiff has failed to present any evidence permitting a reasonable fact-finder to impose liability on the City of McKeesport pursuant to *Monell*. Accordingly, it is respectfully recommended that Defendant's Motion for Summary Judgment be granted, and that judgment be entered in favor of the City of McKeesport as to all claims asserted against it.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Local Rule 72.D.2., the parties are permitted to file written objections no later than September 4, 2014, as set forth in the docket of this matter. Failure to timely file objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Any party opposing objections may file their responses to the objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.D.2.

                    Respectfully Submitted,

                    /s/ Maureen P. Kelly_____
                    MAUREEN P. KELLY
                    UNITED STATES MAGISTRATE JUDGE

Dated: August 18, 2014

cc:    The Honorable Mark R. Hornak
       United States District Judge

       All counsel of record by Notice of Electronic Filing